**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHAWN MILLER, | : | |
| | : | Civil Action No. 12-4045 (CCC) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UMDNJ, et al., | : | |
| | : | |
| Defendants. | : | |

**CECCHI, District Judge:**

*Pro se* Plaintiff Shawn Miller ("Plaintiff") is proceeding, *in forma pauperis*, with the instant Complaint, alleging that Defendants University of Medicine & Dentistry of New Jersey ("UMDNJ"), Nurse James ("James"), and Paul Lagana – the Administrator of Northern State Prison ("Lagana") (collectively referred to as "Defendants") are liable to Plaintiff for violations of his Eighth Amendment rights, pursuant to 42 U.S.C. § 1983. Presently before the Court are two motions for summary judgment filed by Defendants, one by Defendants UMDNJ and James and one by Defendant Lagana, asserting various defenses against Plaintiff's claims. Plaintiff did not file an opposition to either motion. For reasons stated below, the Court denies summary judgment on the claim against Lagana for failure to provide Plaintiff with the special diet as required by his diabetic condition, grants summary judgment in favor of Lagana on Plaintiff's prison conditions claim against him, and dismisses the balance of the claims.[1]

---

[1] The Motion for Summary Judgment by Defendants UMDNJ and James is denied as moot in light of the Court's *sua sponte* dismissal of all claims against them. *See infra*.

# I.    FACTUAL BACKGROUND

For the purposes of this Opinion, the Court construes all facts most favorable to the non-moving party, and recites only relevant facts.  Plaintiff is a diagnosed diabetic who requires continuing medication, including periodic injections of insulin.  (ECF No. 40-2, Ex. B, Deposition of Shawn Miller, Jan. 28, 2014 ("Dep.") at 12:2-14:9.)  Plaintiff was also prescribed, by a doctor, a special diabetic diet.  *Id.* at 61:11-20.  On April 22, 2012, James visited Plaintiff at his cell for the purposes of giving him two injections of insulin.  (Defs.' Statement of Material Facts, ECF No. 7 at ¶ 5.)  James was able to administer the first injection, but after injecting about half of the content of the second injection, James withdrew the syringe and attempted to place it in again.  *Id.* at ¶ 6.  Plaintiff refused to let James re-inject the syringe, because he believed that it was not medically appropriate to do so, and James should have used a new needle.  (Dep. at 24:8-23.)  After some back and forth, James, apparently out of frustration, sprayed the remaining content of the second injection onto Plaintiff's face.  *Id.* at 24:24-25-5.  The evidence of this incident is consistent with Plaintiff's allegations in the Complaint, that "Nurse James was supposed to deliver two shots of insulin to plaintiff on the date in question, however he pulled the syringe out of plaintiff's arm before delivering the dosage," and that James assaulted him by "spray[ing] the contents of the syringe in plaintiff's face and departed the unit without providing plaintiff with his insulin shot."[2]  (ECF No. 1 at 7-8.)

Plaintiff also contends that he was not provided with the special diet prescribed by a doctor.  (ECF No. 1 at 6.)  According to Plaintiff's deposition testimony, he submitted numerous remedy forms to notify the prison of this problem, (Dep. at 30:15-21, 59:14-17, 63:20-64:6), including

---

[2]    The Court includes these allegations from the Complaint for purposes of its *sua sponte* screening, *infra.*

several letters to Lagana. *Id.* at 30:15-21, 59:14-17, 63:20-64:6. Despite his complaints, Plaintiff did not receive his special diet. *Id.* at 64:8-65:5.

In addition, Plaintiff claims in the Complaint that he suffered health complications with permanent debilitating effects, including life-threatening blood sugar levels and multiple diabetic seizures, due to having to consume non-diabetic food. (ECF No. 1 at 6.) Furthermore, Plaintiff asserts that he was housed in units that had deplorable living conditions. *Id.* at 7. Plaintiff claims that the showers did not have running water, and were dirty enough to cause inmates to have fungus on their feet; there was no light in his cell; and the toilet in the cell leaked to such an extent that the cell floor was covered with waste water. *Id.* Plaintiff asserts that he also made repeated complaints about the living conditions. *Id.*

## II.    STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d

3

241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001), *abrogated on other grounds*, *Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Engineers and Participating Employers*, 134 S. Ct. 773 (2014). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson*, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586. In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete

4

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### B. *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or a prisoner seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id. This action is subject to *sua sponte* screening for dismissal under these statutes because Plaintiff is proceeding *in forma pauperis*, he is a prisoner, and he seeks redress from a governmental entity.

"[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege

5

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   DISCUSSION

A plaintiff can pursue a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-1 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-7 (3d Cir. 2013).

The Court construes the Complaint as raising these claims: (1) denial of medical services by James, Lagana, and UMDNJ[3] for failing to provide proper insulin shots to Plaintiff; (2) excessive force by James, Lagana, and UMDNJ; (3) deplorable prison conditions against Lagana; and (4) denial of medical services by Lagana and UMDNJ for failure to provide Plaintiff with a

---

[3]   The Court acknowledges that the question whether UMDNJ is an arm of the state entitled to Eleventh Amendment immunity or a private corporation susceptible to suits under § 1983, is unsettled. *See Endl v. New Jersey*, 5 F. Supp. 3d 689, 699 (D.N.J. 2014) (summarizing conflicting authorities on whether UMDNJ is an alter ego of the state entitled to sovereign immunity). However, as the Court is dismissing all claims against UMDNJ, *infra*, the Court need not reach a conclusion on this issue, and assumes, for the purposes of this Opinion, that UMDNJ is a private corporation performing state functions.

proper diabetic diet.[4]  The Court addresses each of the claims below; on some claims, the Court

exercises its power to dismiss *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2), while other claims

are addressed through the summary judgment motions.[5]

### A. Denial of Insulin

Plaintiff asserts that, when James did not fully administer the insulin shot, Plaintiff was

denied proper medical services in violation of the Eighth Amendment.  James counters, in his

summary judgment motion, that Plaintiff has not exhausted administrative remedies; specifically,

Plaintiff did not appeal the administrative decisions issued in response to the Inmate Remedy

System Forms that Plaintiff filed.  Without addressing James's defense, which appears tenuous,[6]

the Court instead dismisses all claims on this issue under § 1915.

The Eighth Amendment proscription against cruel and unusual punishment also requires

that prison officials provide inmates with adequate medical care.  *See Estelle v. Gamble*, 429 U.S.

97, 103–04 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999).  Under *Estelle*, in order to state

a valid claim for denial of medical care, an inmate must allege: (1) a serious medical need; and (2)

---

[4]     Defendants, in their briefs, raise an immunity defense under the Eleventh Amendment for
claims against them in their official capacity.  Plaintiff does not state in the Complaint whether his
claims are against Defendants in their individual or official capacity.  The Eleventh Amendment
bars suits for monetary damages by private parties against a state or state agencies, including
officials acting in their official capacity.  *Siluk v. Merwin*, 783 F.3d 421, 423 n.5 (3d Cir. 2015)
(citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990)).  As such, the Court construes the
Complaint, which seeks monetary damages under § 1983 against Defendants, as raising individual
capacity claims only.

[5]     § 1915(e)(2) provides that a district court may dismiss a claim "at any time" if the Court
finds dismissal is warranted as described above.  28 U.S.C. § 1915(e)(2).

[6]     For example, in one of the Inmate Remedy System Forms submitted by Defendants with
their motions, the response to Plaintiff's complaint about James was "[y]our complaint is referred
to the nurse manager."  (ECF No. 39-3 at 12.)  It is not clear to the Court that there was an
appealable issue for the purposes of exhaustion.  *See infra*, pp. 13-14.

behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the *Estelle* inquiry, the inmate must allege that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) one that has been diagnosed by a physician as requiring treatment; (2) one that is so obvious that a lay person would recognize the necessity for a doctor's attention; or (3) one for which the denial of treatment would result in the unnecessary and wanton infliction of pain or a life-long handicap or permanent loss. *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted); *see also Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to allege that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse*, 182 F.3d at 197.

Here, Plaintiff does not satisfy the second prong of the *Estelle* test. The Complaint states that "Nurse James was supposed to deliver two shots of insulin to plaintiff on the date in question,

however he pulled the syringe out of plaintiff's arm before delivering the dosage." (ECF No. 1 at 8.) However, there are no allegations that Plaintiff was denied proper insulin injections at any other time before or after the alleged incident; indeed, Plaintiff acknowledges in the Complaint that he has been receiving insulin shots from James "on a daily basis." *Id.* at 7. Without more, Plaintiff has failed to allege sufficient facts to establish that James intentionally refused to provide Plaintiff with the needed medical service. "The occasional unavailability of medication does not rise to the level of a constitutional violation." *Bundrick v. Hammond*, 817 F. Supp. 470, 473 (D. Del. 1993).

Furthermore, there are also no allegations that Plaintiff suffered any ill effects from this one missed injection. "Actual injury is a prerequisite to any claim under § 1983." *Jackson v. Taylor*, No. 05-823, 2008 WL 4471439, at *4 (D. Del. Sept. 26, 2008); *see* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). As such, Plaintiff has failed to allege the elements of a valid denial of medical services claim under the Eighth Amendment, and this claim against James is dismissed.

With regard to Plaintiff's claims against Lagana and UMDNJ for the denial of insulin, those claims necessarily fail because the Court has not found an underlying constitutional violation. *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (holding that when there are no underlying constitutional violations found, it precludes supervisory and policy-making liability, because such conclusion naturally follows from the principle that §1983 claims require personal involvement); *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim"); *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 406 (W.D. Pa. 2012)

9

("Because [plaintiffs have not] pled an actionable due process violation, however, there can be no viable claim for policy-making liability as against [supervisors]"). Accordingly, the claims against Lagana and UMDNJ on this issue are dismissed. Because the Court is dismissing *sua sponte* Plaintiff's denial of medical care services claims, Defendants' motions for summary judgment on this claim are denied as moot.

### B. Excessive Force

Next, Plaintiff asserts that James assaulted him after Plaintiff refused to let James finish the insulin injections. Plaintiff alleges in the Complaint that "[w]hen plaintiff refused to allow Nurse James to restick him with the used syringe Nurse James assaulted him." (ECF No. 1 at 8.) Plaintiff further alleges that James assaulted him by "spray[ing] the contents of the syringe in plaintiff's face and departed the unit without providing plaintiff with his insulin shot." *Id.* The Court construes Plaintiff's claim as one of excessive force in violation of the Eighth Amendment, and similarly dismisses all claims on this issue under § 1915, and denies summary judgment on this claim as moot.

In reviewing excessive force claims under the Eighth Amendment, courts must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Monroe v. Phelps*, 520 F. App'x 67, 70 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Whether the force applied was excessive requires the weighing of several factors, including: (1) the need for force, (2) the relationship between that need and the amount of force used, (3) the extent of the injury, (4) the extent of the threat to safety "as reasonably perceived by responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 231 (1986)). A finding that excessive force was used, or vice versa, must depend on the extent of the

force and the surrounding circumstances, not upon the resulting injury. *Id.* (citing *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002)).

Here, the Court finds that Plaintiff fails to allege that excessive force was used. Although the Court recognizes the arbitrary nature of James's alleged actions, the spraying of insulin onto Plaintiff's face, which resulted in no evidence or allegations of physical injury, amounts to *de minimis* force not to the level of a constitutional violation. *See Hudson*, 503 U.S. at 10 ("That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action"); *Taylor v. Sanders*, 536 F. App'x 200, 202 (3d Cir. 2013) (finding that alleged pushing and punching by penitentiary employee was *de minimis* and not "repugnant to the conscience," so did not support an Eighth Amendment violation); *Reyes v. Chinnici*, 54 F. App'x 44, 48 (3d Cir. 2002) ("There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically"); *Ali v. Kasprenski*, 732 F. Supp. 2d 439, 447 (D. Del. 2010) (finding that shoving by corrections officer was *de minimis* force, because "[t]he Eighth Amendment does not protect an inmate against an objectively *de minimis* use of force, provided that the use of force is not repugnant to the conscience of mankind") (citation and quotation omitted); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Therefore, Plaintiff has failed to state a claim for which relief can be granted, and Plaintiff's claim on this issue against James is dismissed.

To the extent that Plaintiff asserts Lagana and UMDNJ are liable for failure to supervise James, as stated above, there is no supervisory liability if there is no finding of a constitutional violation in the first instance. Consequently, the claims against Lagana and UMDNJ on this issue

11

are also dismissed.  Because the Court is dismissing *sua sponte* Plaintiff's excessive force claims, Defendants' motions for summary judgment on this claim are denied as moot.[7]

### C. Prison Conditions

Next, Plaintiff asserts a claim against Lagana for the allegedly deplorable conditions of his confinement.  Federal law requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Here, Lagana contends in his summary judgment motion that Plaintiff has failed to exhaust his administrative remedies on this claim.  The Court agrees, and will grant summary judgment on this claim.

Undisputed evidence submitted by Defendants shows that Plaintiff did file an Inmate Remedy System Form regarding the lack of hot water in the shower, one of the conditions complained of by Plaintiff.  (ECF No. 39-3 at 13.)  The reviewing officer responded by stating that "[t]here was an issue with the hot water which was resolved and currently there is hot water in the shower," and that "cleaning of the showers are conducted . . . on a weekly basis."  *Id.*  Defendants further submit by affidavit, which Plaintiff does not contest, that "Plaintiff did not administratively appeal the Inmate Remedy System Form responses returned to him."  *Id.* at 3.  The record shows

---

[7]     Plaintiff also asserts in the Complaint that James made sexual advances toward Plaintiff, and when Plaintiff refused, James threatened, among other things, to stop providing Plaintiff with medical services.  (ECF No. 1 at 7.)  However, there are no allegations in the Complaint that any threats were actually carried out by James.  Indeed, as stated above, Plaintiff asserts that he has been receiving his daily insulin shots from James.  Subjective fear is not enough to state a constitutional claim under § 1983.  *See Runyon v. Danberg*, No. 12002, 2012 WL 1657131, at *8 (D. Del. May 9, 2012) (finding that the plaintiff's subjective fear was insufficient to state an eighth amendment claim); *see also Turner v. Bunn*, 107 F.3d 17, 18 (9th Cir. 1997) (holding that a general fear of harm does not create a genuine issue of triable fact as to the risk of serious harm); *Davis v. Scott*, 94 F.3d 444, 446–7 (8th Cir. 1996) (same).

that Defendants properly responded to Plaintiff's complaint, there is no evidence that Plaintiff appealed the response, and there is also no evidence that Plaintiff filed subsequent complaints about his conditions of confinement. Accordingly, the Court finds that Plaintiff has failed to exhaust administrative remedies on this claim, and summary judgment is granted on this claim. *See Small v. Camden Cnty.*, 728 F.3d 265, 272 (3d. Cir. 2013) ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself") (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

### D. Diabetic Diet

Lastly, with respect to Plaintiff's claims against Lagana and UMDNJ for the denial of a proper diet to Plaintiff for his diabetic condition, the Court addresses this claim in the context of Lagana's motion for summary judgment. Before the Court addresses the merits of the claim, the Court first addresses Lagana's affirmative defense that Plaintiff failed to exhaust administrative remedies on this claim, a defense which the Court rejects.

Undisputed evidence shows that Plaintiff did indeed file an Inmate Remedy System Form regarding his special diet needs. (ECF No. 39-3 at 10.) The response from the reviewing official was that "[y]our diet order has been faxed to the Food Services Department." *Id.* Lagana asserts that because Plaintiff did not appeal the decision, he has failed to exhaust administrative remedies. But as the official response makes clear, there is no appealable issue. The response shows that the reviewing official agreed with Plaintiff and affirmatively held that Plaintiff should receive a special diet for his conditions. According to *Small*, Plaintiff is not required to appeal a decision to satisfy the administrative exhaustion requirement when there is no appealable issue. *See Small*, 728 F.3d at 273 (finding that no appeal was necessary to exhaust administrative remedies when no decision

has been made on plaintiff's grievances, because "CCCF's procedures discuss only the appeal of a decision with which the inmate is not satisfied"). If the plaintiff in *Small* was not required to appeal when no decision has been made, surely there cannot be a requirement to appeal when, as it is here, a plaintiff received a ***favorable*** decision. As such, the Court rejects Defendants' affirmative defense on exhaustion grounds.

The Court also finds that UMDNJ cannot be liable because there is no *respondeat superior* liability in § 1983 claims. The prohibition against *respondeat superior* liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies equally to private corporations performing state functions. *See Weigher v. Prison Health Servs.*, 402 F. App'x 668, 670 (3d Cir. 2010) (holding that a private corporation providing medical services at a state correctional facility cannot be held liable under a theory of *respondeat superior* in a § 1983 suit); *Lassoff v. N.J.*, 414 F. Supp. 2d 483, 494 (D.N.J. 2006) (finding that other courts considering the issue have extrapolated the holdings of *Monell* to apply to private companies performing state functions). As such, Plaintiff has failed to state a claim for which relief can be granted, and Plaintiff's claim on this issue against UMDNJ is dismissed.

However, with regard to Lagana's argument against *respondeat superior* liability, Lagana misconstrues Plaintiff's claim – Plaintiff's claim against Lagana on this issue is not based on a theory of *respondeat superior*, but on the notion that Lagana was personally and deliberately indifferent to Plaintiff's medical needs. Courts have held that when a supervisor has personal knowledge of an unconstitutional violation, but did not act to cure that violation, the supervisor is deemed to have personal involvement in the violation, and § 1983 claims against him are proper. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004) ("[A] supervisor may be personally liable under § 1983 if he or she . . . as the person in

14

charge, had knowledge and acquiesced in the subordinate's violations"); *Evancho v. Fisher*, 423

F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence"); *Wenzke v. Corr. Med. Servs.*, 603 F. Supp.

2d 770, 776 (D. Del. 2009) ("A prison official is deliberately indifferent if he knows that a prisoner

faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm") (citing

*Farmer*, 511 U.S. at 837); *Cardona v. Warden – MDC Facility*, No. 12-7161, 2013 WL 6446999,

at *5 (D.N.J. Dec. 6, 2013) (holding that plaintiff has stated a valid denial of medical services

claim against the prison warden because plaintiff alleged an ongoing constitutional violation, and

alleged that the warden was made aware of the ongoing violation through repeated written

requests); *Binsack v. Lackawanna Cnty. Prison*, No. 10–535, 2010 WL 4973309, at *3 (M.D. Pa.

Oct.14, 2010) ("A prisoner's grievance or complaint regarding ongoing abuse may be sufficient to

put a prison official on notice of such abuse by other prison staff and therefore may show actual

knowledge of an alleged constitutional violation and acquiescence in the events forming the basis

of a prisoner's claims") (citing *Atkinson*, 316 F.3d at 270–71), report and recommendation adopted

by, 2010 WL 4956329 (M.D. Pa. Dec. 1, 2010); *Carter v. Smith*, No. 08-279, 2009 WL 3088428,

at *6 (E.D. Pa. Sept. 23, 2009) ("Where a grievance alleges an ongoing constitutional violation, a

supervisory defendant who reviews it is personally involved in that violation because he is

confronted with a situation he can remedy directly") (quoting *Harnett v. Barr*, 538 F. Supp. 2d

511, 524–25 (N.D.N.Y. 2008)); *cf. Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005)

(holding that supervisor defendants are not liable because "allegations [that] . . . merely assert their

involvement in the post-incident grievance process" are insufficient to establish liability).

Here, Plaintiff has established the elements of a denial of medical services claim against

Lagana. With regard to the first prong of the *Estelle* test, undisputed evidence shows that a doctor

15

prescribed a special diet to Plaintiff for his diabetic conditions, (Dep. at 61:11-20), and Defendants have not argued that this is not a serious medical need; indeed, the favorable response by prison officials to Plaintiff's complaint, to fax Plaintiff's diet order to the Food Services Department, suggests the recognition of a serious medical need.  Hence, the Court finds that Plaintiff has established the first element of the *Estelle* test.

With regard to the second prong of the *Estelle* test, Lagana asserts that he cannot be deliberately indifferent because Plaintiff was under the continuous care of medical personnel, and he is not charged with the responsibility of providing medical care to inmates.  (ECF No. 39-1 at 23.)  Lagana relies on *Durmer v. O'Caroll*, 991 F.2d 64 (3d Cir. 1993), and *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), for his assertion.  However, in those cases, the Third Circuit rejected supervisory liability despite personal knowledge on the proposition that supervisors can presume, if a prisoner is under the care of a medical professional, the prisoner is in capable hands.  *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 236.  This rationale makes sense because supervisors often lack the expertise to determine what is or is not proper medical treatment.  In contrast, here, no argument can be made that Lagana lacked the expertise to direct the Food Services Department to provide Plaintiff with the proper diet, nor can the Food Services Department be considered a medical professional.

Instead, as stated above, deliberate indifference can be shown by demonstrating actual knowledge and acquiescence on the part of Lagana, and the available record supports Plaintiff's claim.  Plaintiff testified that the alleged constitutional violation was on-going.  (Dep. at 64:8-65:5.)  Plaintiff also testified that he filed dozens of remedy forms, *id.* at 29:23-31:15, including many related to his need for a special diet. *Id.* at 30:15-21, 59:14-17, 63:20-64:6.  Plaintiff further testified that he wrote directly to Lagana on several occasions. *Id.* at 40:16-21, 46:9-17, 50:18-24.

16

Plaintiff does not merely assert that Lagana was involved in the grievance process; he asserts that Lagana had personal knowledge because he has made repeated attempts to notify Lagana personally.  As the above caselaw makes clear, an ongoing constitutional violation, coupled with Plaintiff's repeated attempts to notify the prison and Lagana, is enough to establish a *prima facie* case of an Eighth Amendment violation against Lagana.

Lagana has submitted no evidence to rebut Plaintiff's claim.  Lagana does not dispute, let alone provide any evidence to rebut, that the medical need was serious, or that the deprivation was ongoing.  While Lagana argues there is no direct evidence that he knew of the alleged ongoing constitutional violation,[8] nonetheless Lagana submitted no evidence, either in the form of an affidavit, a declaration, or sworn testimony, that he did not have personal knowledge.  On summary judgment, it is Lagana's burden to establish the absence of a genuine dispute of material facts, and he has failed to do so.  Accordingly, the Court finds that summary judgment is not warranted on this claim against Lagana.[9]

### E.  Qualified Immunity

---

[8]      In these prisoner cases, it is frequently impossible to have direct evidence of personal knowledge.  Often times, as it is here, the inference of knowledge must be drawn from circumstantial evidence.  *See Farmer*, 511 U.S. at 842-43; *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) ("A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence").

[9]      Consistent with the holdings above, the Court denies summary judgment on the issue of punitive damages.  *See In re Bayside Prison Litig.*, 341 F. App'x 796, 797 (3d Cir. 2009) (holding that a finding of deliberate indifference based on knowledge and acquiescence is sufficient to sustain an award of punitive damages); *Tatsch-Corbin v. Feathers*, 561 F. Supp. 2d 538, 545 (W.D. Pa. 2008) (finding that in determining whether punitive damages are appropriate in a § 1983 action, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk," and that punitive damages apply "even when the underlying standard for liability for compensatory damages is one of recklessness") (quoting *Farmer*, 511 U.S. at 836-37 and *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Lastly, the Court briefly addresses Lagana's claim of qualified immunity. The Supreme Court very recently summarized the standard for qualified immunity, stating that:

> Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015). To that end, the Third Circuit has held that a prison supervisor's knowledge and acquiescence of a prisoner's serious medical need is a clearly established Eighth Amendment violation. *See Atkinson*, 316 F.3d at 270-71.

Here, the alleged violation asserted against Lagana, if true, unquestionably violates a clearly established constitutional right. Plaintiff was prescribed a diabetic diet by a doctor, and as stated above, there is sufficient evidence in the record to support a conclusion that Lagana knew about his medical need, but was deliberately indifferent toward it. Ignorance of a prisoner's obvious medical need by a prison official is the quintessential denial of medical services claim under the Eighth Amendment. *See Farmer*, 511 U.S. at 842; *Natale*, 318 F.3d at 582; *Duran v. Merline*, 923 F. Supp. 2d 702, 729 (D.N.J. 2013). Indeed, even a lay person would recognize that failure to provide a diabetic with the proper diet for his condition would result in serious medical consequences. As such, the Court rejects Lagana's claim of qualified immunity.

## IV.   CONCLUSION

For the reasons set forth above, the Court DENIES summary judgment on the claim against Lagana for failure to provide Plaintiff with the special diet as required by his diabetic condition, GRANTS summary judgment for Lagana on Plaintiff's prison conditions claim, and DISMISSES

the remainder of the claims pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted.

Claire C. Cecchi, U.S.D.J.

Dated:  August 10, 2015